UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ETHAN PAULINI AND CHRISTINA SAJOUS,<br><br>*Plaintiffs,*<br><br>- against -<br><br>THE CITY OF NEW YORK; NEW YORK CITY POLICE OFFICER EUGENE CHOI, in official and individual capacities; NEW YORK CITY POLICE OFFICER RICHARD DELROSARIO, in official and individual capacities; NEW YORK CITY POLICE OFFICER MITCHELL, in official and individual capacities; NEW YORK CITY POLICE OFFICER POLANCA, in official and individual capacities, JOHN DOE POLICE OFFICERS 1-10, identities and number unknown, individually and in official capacities as New York City Police Officers, and GREGORY ADOLPH,<br><br>*Defendants.* | **AMENDED COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>Index No. 15-cv-7059 |

Plaintiffs Ethan Paulini and Christina Sajous ("Paulini" and "Sajous" or "Plaintiffs"), by and through their undersigned counsel, Schlam Stone & Dolan LLP, for their Complaint against defendants, allege as follows:

## NATURE OF THE ACTION

1. This is an action arising out of the false arrest and imprisonment of Plaintiffs for supposedly failing to pay a taxifare. As set forth below, when Plaintiffs were accused of having failed to pay the said fare, Plaintiff Paulini told the arresting officers that he had a written receipt from the driver showing that the fare had already been paid. In addition, Plaintiff Paulini tendered the fare to the driver again, in the presence of the arresting officers, thus paying the fare twice.

2. Plaintiff Paulini had recorded a portion of his contact with the defendant police officers on his iPhone, which contained statements at the time of arrest by Paulini that he had in fact paid the taxi fare, and had a written receipt in his trouser pocket. The defendant officers confiscated Plaintiff Paulini's phone at the time of his arrest. When the iPhone was returned to Paulini after his arraignment, the audio recording as well as some previously taken photographs had all been erased.

3. Despite those facts, the officers wrongfully and unlawfully arrested Paulini on the driver's allegation that the fare had not been paid, even though Paulini had a receipt confirming payment in his pocket and the officers witnessed the second payment with their own eyes. When Plaintiff Sajous asked why the officers were arresting Paulini, the officers promptly arrested her too.

4. None of the four officers ever attempted to confirm the truthfulness of what Paulini was saying, or even attempted to corroborate the claims of the cab driver, who continued to abuse the Plaintiffs during Plaintiffs' encounter with the defendant officers.

5. There was no good faith basis for defendant Adolph to allege that Plaintiffs had failed to pay any fare due and owing to him, since defendant Adolph knew that the fare had been paid and that he had given Plaintiff Paulini a written receipt evidencing that payment.

6. There was no good faith basis for the arrest and imprisonment of Plaintiffs, or for the misconduct in deleting the recording on Paulini's iPhone that provided direct evidence of Paulini's statements to the defendant police officer that the defendant cab driver's claims were not true.

7. Plaintiffs now bring this action to obtain relief for the violation of their constitutional and statutory rights.

## THE PARTIES

8. Plaintiffs Ethan Paulini and Christina Sajous are citizens of the United States and residents of the City and State of New York. At the time of the attack Paulini was thirty-four (34) years old and Sajous was twenty-nine (29) years old. The Plaintiffs are both working actors.

9. Defendant City is a municipal corporation organized under the laws of the State of New York. Defendant City is responsible for the operation, management, and control of the New York City police force and all of its officers, agents, and employees, and for the hiring, screening, training, retention, supervision, discipline, counseling and control of New York City police officers.

10. Upon information and belief, defendant Eugene Choi was one of the officers present with Plaintiffs on September 11, 2014, and was acting under color of state law and within the scope of his employment as a New York City police officer at all times relevant to this action. Defendant Choi carried Shield Number 3654, and was assigned to the 24th Precinct.

11. Upon information and belief, defendant Richard Delrosario was one of the officers present with the Plaintiffs on September 11, 2014, and was acting under color of state law and within the scope of his employment as a New York City police officer at all times relevant to this action. Defendant Delrosario carried Shield Number 10355.

12. Upon information and belief, defendant police officer Mitchell was one of the officers present with the Plaintiffs on September 11, 2014, and was acting under color of state law and within the scope of his employment as a New York City police sergeant at all times relevant to this action. Sergeant Mitchell's first name and shield number are presently unknown.

13. Upon information and belief, defendant police officer Polanco was one of the officers present with the Plaintiffs on September 11, 2014, and was acting under color of state law and within the scope of his or her employment as a New York City police officer at all times relevant to this action. Officer Polanca's name, gender and shield number are presently unknown.

14. Upon information and belief, Defendants John Doe Police Officers 1-10 were officers, employees, and/or agents of the New York City Police Department, with supervisory responsibilities for the training, instruction, supervision and discipline of the junior officers who committed the specific acts and omissions complained of herein, acting under color of state law and within the scope of their employment as a New York City police officers at all times relevant to this action.

15. Defendant Gregory Adolph is a medallion yellow cab taxi driver in New York City with the license number 5414162.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a). Specifically, the Court has jurisdiction over Paulini and Sajous's claims arising under federal law pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §§ 1367(a).

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to Paulini and Sajous's claims occurred in New York, New York, a borough of the City of New York within the jurisdiction of this Court.

## NOTICE OF CLAIM

18. Paulini and Sajous served a Notice of Claim on the Comptroller of the City of New York, by delivering such Notice of Claim to the New York City Law Department, on or about December 10, 2014, within 90 days of the events giving rise to this Complaint. A Rule 50-h examination was conducted by Defendants on Sajous on May 13, 2015, and Paulini on May 27, 2015. The claim has a New York City BLA Claim number of 2014PI037059.

19. More than 30 days have elapsed since service of the Notice of Claim and adjustment or payment thereof has been neglected or refused by the Defendants.

## TRIAL BY JURY

20. Paulini and Sajous demand a trial by jury of all the claims asserted in this Amended Complaint.

## STATEMENT OF FACTS

21. On Wednesday, September 10, 2014, Sajous and Paulini attended an off-Broadway show at the Minetta Lane Theatre in New York City. After the performance, they went out to eat, and thereafter decided to take a cab home together.

22. At approximately 12:30 a.m. on Thursday, September 11, 2014, Paulini hailed a taxicab on the corner of West 13th Street and 7th Avenue, in New York City, and headed uptown to their destination. Defendant Gregory Adolph was the driver of the taxi. For about twenty (20) blocks, Adolph took City streets, and had to stop frequently for red lights. Sajous asked the driver to take the Westside Highway for the remainder of the trip, to which Adolph responded with a resounding "No." Sajous told Adolph that she believed it was against the law for a taxi driver to refuse a requested route by a passenger, and that Adolph was bound to honor her request.

23. In response, the driver mumbled, "I don't have to do anything for a Nigger." Stunned by that statement, Paulini immediately asked, "What did you say?" The driver responded in a much louder voice, "Now the Faggot got something to say."

24. Plaintiffs immediately asked the driver to pull over and let them out, but Adolph refused to do so. Plaintiffs continued to protest but Adolph locked the doors so that Plaintiffs could not get out. Finally, while stopped at a red light on the corner of 96th Street and Central Park West, Paulini unlocked the door and put one foot on the street and told Sajous to get out and wait on the corner. At that point, the fare on the meter was approximately $19.50. Paulini handed Adolph a $20.00 bill.

25. Adolph refused to accept the proffered payment, stating that he would not take it because Plaintiffs had already made him come this far uptown, and he was going to take them to their final destination to get the full fare. He said he wasn't inclined to pick up a fare going downtown from a "filthy Nigger neighborhood."

26. After some protesting, the driver took the $20.00 and Paulini requested a receipt. Adolph refused. Paulini said that he would not get out of the cab until Adolph gave him a receipt. Adolph finally complied but informed them he was still going to call the police, saying "Who would believe a Nigger and a Faggot?" Ignoring Defendant Adolph's continuing insults, Pauline exited the taxicab after having received the receipt showing payment of the fare.

27. Paulini told Sajous that they should take the subway the rest of the way home. They proceeded into a nearby subway station, paid the subway fare and went onto the subway platform. Shortly thereafter, four (4) uniformed police officers, whom Plaintiffs later learned included defendants Choi, Delrosario, and, on information and belief, Polanca and Mitchell,

came walking toward them and asked Plaintiffs to come upstairs with them, outside the subway station. Plaintiffs complied with the officers' request.

28. Upon arriving at the top of the stairs, Adolph appeared and proceeded to berate Plaintiffs. In response, Paulini pulled out another $20.00 bill and said "Here if this makes you go away, please take it." Adolph took the $20.00. Paulini said to Adolph and the defendant officers that "now I had paid for it twice."

29. In an effort to demonstrate to the officers that he had already paid the fare, Paulini reached for his pocket to retrieve the receipt he had obtained from Adolph after having paid the $20.00 fare the first time. One of the police officers told Paulini to "Never put your hands in your pockets around a police officer," and handcuffed him. Paulini apologized and explained that he was merely trying to show the officer his receipt for having paid the fare to Adolph before exiting the taxi. The officer responded "Show it to the Judge" as he shoved him in the back of a police cruiser.

30. Shortly after the initial encounter with the defendant police officers, Paulini, in an effort to memorialize what was occurring, activated his iPhone recording mechanism to record the encounter. Because it was in his pocket, it could only record audio. Paulini had also used his iPhone previously while in the cab to take photographs of the Medallion license which contained the photograph of defendant Adolph and which was visible to the passengers.

31. At no time during the entire encounter with Plaintiffs did defendants Choi, Delrosario, Polanca or Mitchell show any interest in investigating the truth of Paulini's claim that he had paid the taxi fare, or even ask to see the receipt that Paulini stated he was trying to retrieve from his pocket.

7

32. Sajous asked the officer, "Why are you arresting him?" The next thing Sajous knew she was in handcuffs and placed in the back of a police car.

33. As Sajous was being led away, Paulini heard her ask the officer "So, he [meaning the driver] can insult us, and we are the ones getting arrested?" to which one of the police officers responded "Yup."

34. Plaintiffs were transported to the 24th Precinct, where Paulini was put in a cell with two (2) other males. Sajous was told to sit on a bench in front of a cell, where she was handcuffed to a radiator.

35. Plaintiffs remained at the precinct until around 5:30 a.m., at which point Paulini was handcuffed to two (2) other individuals and placed in the back of a police van. Paulini arrived at 100 Centre Street at around 6:00 a.m. During the entire time, Paulini remained handcuffed to the two (2) other men. He was thereafter photographed for a mug shot and placed in another cell, where there were about twenty-five (25) men already lying on the floor. Paulini was never given the option to use a telephone.

36. Sajous was handcuffed to the radiator for a period of four hours. After Plaintiff Paulini was taken away (at around 5:30 a.m.), Sajous was released from the radiator and placed in a cell. At about 7:30 a.m., Sajous was transported from the precinct to 100 Centre Street. She was driven most of the way there with two officers, and because they could not find parking close to the courthouse, Sajous was forced to walk four to five blocks in public to the courthouse while in handcuffs.

37. Upon arrival at 100 Centre Street, Sajous was photographed and transferred to a cell where she remained for another several hours.

38. As previously noted, beginning shortly after the initial encounter with Defendant police officers, Plaintiff Paulini had used his iPhone to record audio of the events. Upon being arrested, Paulini's iPhone was seized and taken into possession of the defendant police officers. While at the 24th precinct, Plaintiff Sajous' mother, Ms. Carol Jones arrived there in an attempt to secure the release of Sajous and Paulini. When she was not able to do so, Ms. Jones attempted to recover Plaintiffs' personal belongings, which included the iPhone that belonged to Paulini. Paulini had given Ms. Jones permission to secure his iPhone from the police and had advised the police of the same.

39. Later that day, Plaintiffs were arraigned. Both Paulini and Sajous entered a plea of not guilty, and both were released.

40. Ms. Jones informed the police officers of her having been provided permission to retrieve Paulini's iPhone. In response to the request that Paulini's iPhone be given her, Ms. Jones was first told no and then made to wait before receiving it. Ms. Jones waited for 20 minutes and was ultimately provided the phone.

41. Upon later receiving the iPhone, Paulini reviewed it in Ms. Jones' presence, and it was then that he discovered that the audio which he had recorded earlier, as well as some photographs, including those of the taxi's medallion and several personal photos which had been stored prior to the events of that morning, had been deleted. Neither Plaintiff Paulini, Plaintiff Sajous, nor Ms. Jones deleted either the audio/video or the photographs from Paulini's iPhone.

42. Upon information and belief, one or more of the defendant officers deleted the photos and audio/video from Paulini's iPhone before giving it to Ms. Jones.

43. All charges against Plaintiffs were dismissed in or about November 2014.

44.     The conduct of each defendant as alleged herein was willful, wanton, gross, malicious, and reckless.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – False Arrest; Against Defendants Choi, Delrosario, Mitchell and Polanco)

45.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

46.     By engaging in the conduct described above, defendants Choi, Delrosario, Mitchell and Polanco, acting under color of state law, deliberately and intentionally confined Paulini and Sajous to police custody, from which they was not free to leave, by arresting them without probable cause, transporting them to the police precinct, maintaining them in police custody and holding them in jail, as described above, until they were released from police custody after being arraigned on September 11, 2014.

47.     Paulini and Sajous were forcefully arrested by officers Choi, Delrosario, Mitchell and Polanco and never resisted the authority of said defendants or did anything to obstruct the said defendants in performing their duties. Paulini and Sajous were held in custody against their will, and such confinement was without justification, probable cause, or other lawful basis.

48.     Officers Choi, Delrosario, Mitchell and Polanco intended to confine Plaintiffs, Plaintiffs were conscious of the confinement, Plaintiffs did not consent to the confinement and the confinement was not otherwise privileged.

49.     By confining Paulini and Sajous against their will and without probable cause or other lawful justification, defendants Choi, Delrosario, Mitchell and Polanco deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

50. The conduct of defendants Choi, Delrosario, Mitchell and Polanco, as aforesaid, directly and proximately caused Paulini and Sajous severe harm.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Supervisory Liability; Against Defendants John Doe Officers 1-10)

51. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

52. Upon information and belief, at all relevant times, John Doe Officers 1-10 (the "Supervisory Officers"), were senior and supervisory personnel at the New York City Police Department, responsible for the training, instruction, supervision and discipline of officers Choi, Delrosario, Mitchell and Polanco.

53. The Supervisory Officers were grossly negligent in supervising officers Choi, Delrosario, Mitchell and Polanco when, acting under color of state law, they either joined in unlawfully arresting and detaining Plaintiffs and deleting either the audio/video or the photographs from Paulini's iPhone as described above or failed to prevent the more junior officers from doing so, despite that the unconstitutional conduct was occurring in their presence and they could have intervened to stop it.

54. The Supervisory Officers exhibited a deliberate indifference to Plaintiffs' rights by failing to properly supervise officers Choi, Delrosario, Mitchell and Polanco when, acting under color of state law, they either joined in unlawfully arresting and detaining Plaintiffs and deleting either the audio/video or the photographs from Paulini's iPhone as described above or failed to prevent the more junior officers from doing so, despite that the unconstitutional conduct was occurring in their presence and they could have intervened to stop it.

55. If they had exercised appropriate supervision over officers Choi, Delrosario, Mitchell and Polanco on the scene, the Supervisory Officers could have prevented them from unlawfully arresting and detaining Plaintiffs and deleting either the audio/video or the photographs from Paulini's iPhone.

56. The Supervisory Officers' conduct directly and proximately caused Plaintiffs severe harm.

### THIRD CLAIM FOR RELIEF
### (42 U.S.C. § 1986 – Failure to Intervene; Against Defendants Choi, Delrosario, Mitchell, Polanco and John Doe Officers 1-10)

57. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

58. Defendants Choi, Delrosario, Mitchell, Polanco and John Doe Officers 1-10 each had an affirmative duty to intervene on Plaintiffs' behalf to prevent a violation of Plaintiffs' constitutional rights.

59. Despite having been offered proof that no crime had been committed by Plaintiffs, none of said defendants took any action to prevent the violation of Plaintiffs' constitutional rights. Such failure to intervene was malicious and/or demonstrated an intentional, reckless, and/or negligent indifference to Plaintiff's safety and legal rights, in violation of 42 U.S.C. § 1986.

60. The conduct of defendants Choi, Delrosario, Mitchell, Polanco and John Doe Officers 1-10, aforesaid, directly and proximately caused Plaintiffs to suffer severe harm.

**FOURTH CLAIM FOR RELIEF**
**(42 U.S.C. § 1983: Monell Claim for Failure to Train,**
**Supervise and Discipline; Against Defendant City)**

61. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

62. Defendant City, by and through its policymakers, created and maintained customs, policies and/or practices of failing to adequately train, supervise and discipline their employees and agents, including the named and unnamed defendants in this case, regarding probable cause to ensure that civilians not be falsely arrested, wrongly imprisoned and maliciously prosecuted, and regarding civilian's right to be free from the illegal seizure, withholding and theft of property, including audio/video and photographs such as were deleted from Paulini's iPhone by one or more of the officer defendants herein.

63. Defendant City had actual or constructive notice of its failure to train, supervise and discipline its employees.  Defendant City knew that it was foreseeable that its officers would confront situations requiring knowledge of probable cause for arrest, grounds for detention, and the maintenance and return of personal property, including electronically stored information on an arrestee's phone, and that without proper training, supervision and discipline, constitutional violations would result.  Defendant City chose not to provide such training, supervision and discipline.

64. Defendant City's failure to train, supervise and discipline amounted to gross negligence, deliberate indifference and/or intentional misconduct, and encouraged and/or permitted the individual defendants herein to engage in conduct which proximately and directly caused Plaintiffs' injury and damages as described herein.

65. Defendant City's negligence, culpable indifference and intentional conduct as described above has directly and proximately caused Paulini and Sajous severe harm.

## FIFTH CLAIM FOR RELIEF
### (New York State Law: Negligent Hiring, Training, and Supervision; Against Defendant City)

66. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

67. At all relevant times, officers Choi, Delrosario, Mitchell and Polanco and John Doe Officers 1-10 were employed by defendant City, and were acting in the scope of their employment when the acts and omissions complained of herein occurred.

68. At the relevant times, the City had a duty to exercise reasonable care in the hiring, training, and supervision of its employee police officers so that the rights of individuals they encountered when performing their duties would not be violated.

69. The City failed to exercise reasonable care in the hiring, training and supervision of its employees, including officers Choi, Delrosario, Mitchell and Polanco and John Doe Officers 1-10. The City knew or should have known that each of officers Choi, Delrosario, Mitchell and Polanco and John Doe Officers 1-10, as a result of inadequate training and supervision, would be disposed toward the practices described herein with respect to arrest without probable cause, unjustified detention, and the failure to maintain and return personal property, including electronically stored information on an arrestee's phone.

70. The City's negligence as described above has directly and proximately caused Paulini and Sajous severe harm.

## SIXTH CLAIM FOR RELIEF
### (New York State Law – False Arrest; Against Defendants Choi, Delrosario, Mitchell and Polanco)

71. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

72. By engaging in the conduct described above, defendants Choi, Delrosario, Mitchell and Polanco, deliberately and intentionally confined Paulini and Sajous to police custody, from which they was not free to leave, by arresting them without probable cause, transporting them to the police precinct, maintaining them in police custody and holding them in jail, as described above, until they were released from police custody after being arraigned on September 11, 2014.

73. Paulini and Sajous were forcefully arrested by officers Choi, Delrosario, Mitchell and Polanco and never resisted the authority of said defendants or did anything to obstruct the said defendants in performing their duties. Paulini and Sajous were held in custody against their will, and such confinement was without justification, probable cause, or other lawful basis.

74. Officers Choi, Delrosario, Mitchell and Polanco intended to confine Plaintiffs, Plaintiffs were conscious of the confinement, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

75. The conduct of defendants Choi, Delrosario, Mitchell and Polanco, as aforesaid, directly and proximately caused Paulini and Sajous severe harm.

## SEVENTH CLAIM FOR RELIEF
### (New York State Law: Malicious Prosecution; Against Defendant Adolph)

76. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph

77. Defendant Gregory Adolph falsely accused Plaintiffs of failing to pay the fare for a taxi ride, knowing that in fact Plaintiffs had paid said fare in full.

78. Defendant Gregory Adolph falsely commenced a criminal proceeding against Plaintiffs without cause or factual basis and with actual malice.

79. The conduct of defendant Gregory Adolph as aforesaid resulted in the arrest and imprisonment of Plaintiffs, as defendant Gregory Adolph intended it to do.

80. Said proceeding was terminated in Plaintiffs' favor.

81. Defendant Gregory Adolph's conduct, as aforesaid, directly and proximately caused Paulini and Sajous to suffer severe harm.

## EIGHTH CLAIM FOR RELIEF
### (New York State Law: False Imprisonment; Against Defendant Adolph)

82. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

83. By refusing to permit Plaintiffs to leave his taxi when they asked to do so, and by locking the doors and driving several miles with Plaintiffs aboard after their effort to leave his taxi, defendant Adolph subjected Plaintiffs to a false imprisonment.

84. Defendant Adolph intended to confine Plaintiffs, Plaintiffs were conscious of the confinement, Plaintiffs did not consent to the confinement, and the confinement was not otherwise privileged.

85. Defendant Gregory Adolph's conduct, as aforesaid, directly and proximately caused Paulini and Sajous to suffer severe harm.

## NINTH CLAIM FOR RELIEF
### (Conversion; Against Defendants City, Choi, Delrosario, Mitchell and Polanco)

86. Plaintiffs repeat and reallege each and every allegation above as if fully set forth in this paragraph.

87. Paulini was and is the rightful owner of the iPhone in his possession on the night of September 11, 2014 and the information contained therein, and of the money and personal possessions that were in the jacket pockets when the defendant police officers took the phone and deleted pictures and audio or video recordings.

88. None of the defendants has ever returned the money to Paulini and Sajous.

89. Continued possession and tampering by defendants of the seized possessions, and failure to return them to Paulini and Sajous, are unauthorized.

90. Paulini and Sajous have been damaged by defendants' failure to return and tampering with the seized possessions.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against each defendant on each of the claims as set forth above, and award Plaintiffs compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; pre- and post-judgment interest; and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 23, 2015

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

By: _____
Michael A. Battle
Douglas E. Grover
Thomas A. Kissane

26 Broadway
New York, New York 10004

Telephone No.: (212) 344-5400
Facsimile No.: (212) 344-7677
Email: mbattle@schlamstone.com
Email: dgrover@schlamstone.com
Email: tkissane@schlamstone.com

*Attorneys for Plaintiffs*